# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9091 | **DATE** | 9/24/2004 |
| **CASE TITLE** | GERALD JACKSON vs. CARPENTERS LOCAL UNION #1 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants Local 1's motion for summary judgment [doc. no. 11-1]. This case is hereby terminated. Any pending motions or schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 25 |
| ✓ | Mail AO 450 form. | | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| CG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 02 C 9091 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| CARPENTERS LOCAL UNION #1, ) | |
| ) | |
| Defendant. ) | |

DOCKETED SEP 2 4 2004

## MEMORANDUM OPINION AND ORDER

Following the denial of his request to be made a steward, Plaintiff Gerald Jackson sued Carpenters Local Union #1 ("Local 1") for discrimination based on race, color, or national origin in violation of 42 U.S.C. § 1983 ("section 1983"), retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, race discrimination in violation of Title VII and 42 U.S.C. § 1981 ("section 1981"), and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Pending is defendant Local 1's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## FACTS

The following facts are undisputed or have been deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. Carpenters Local Union #1 ("Local 1") is a labor organization with a geographical jurisdiction that includes approximately the entire downtown Chicago Loop high-rise area. (Def.'s LR 56.1(a)(3) ¶ 10.) Local 1 is a labor organization and not a state or local government agency. (Compl. ¶ 10; Def.'s LR 56.1(a)(3) ¶ 19.)

25

Jackson, an African American, has been a member of Local 1 off and on since 1978. (Def.'s LR 56.1(a)(3) ¶¶ 1, 20.) Jackson was a member of Local 1 during 2001 and 2002. (*Id.* ¶ 6.)

A union steward is responsible for acting as the representative of the union while a business representative of the union is not present on a particular job site. (*Id.* ¶ 21.) The steward is not an employee of the union but is an employee of a construction contractor that has a Collective Bargaining Agreement with the union. (*Id.* ¶ 22.) The responsibilities of a steward, aside from the working requirements of his employer, is to check on the dues and membership status of carpenters on the job site and to report matters of importance to the union concerning the processing of grievances of carpenter members. (*Id.* ¶ 23.)

On July 25, 2002, Jackson, who was unemployed and not working at any Union job sites, met with two business representatives of Local 1, Robert Quanstrom and Ron Culbertson, to request that Local 1 place him as a steward on a job site in Local 1's jurisdiction. (*Id.* ¶¶ 9, 11.) Both Quanstrom and Culbertson refused and told Jackson that they would never make Jackson a steward. (*Id.* ¶ 12.) Both men cited Jackson's failure to pay union dues on a regular basis, which caused him to be dropped as a union member on at least four occasions, and Jackson's hostility toward Hispanics and Caucasians, whom they believed he refused to work with, as reasons why Local 1 could not afford to have Jackson as its representative. (*Id.* ¶ 18.) Jackson then threatened to file a discrimination charge at the Equal Employment Opportunity Commission ("EEOC") for retaliation because of a previous charge filed against Local 1. (*Id.* ¶ 13.) Quanstrom replied, "I do not care what you do, you can do whatever you want." (*Id.*) Jackson had recently performed the position of steward for a jobsite not affiliated with Local 1. (*Id.* ¶ 20.)

Following this discussion, Jackson filed a charge with the EEOC on August 5, 2002. (*Id.* ¶ 14.) In the body of the charge, he stated: "I believe I have been retaliated against for filing previous EEOC charges of discrimination, because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my disability, in violation of the Americans with Disabilities Act of 1990." (Pl.'s Ex., EEOC Charge 210A204364 submitted to Court on Dec., 16, 2002.) Jackson received a notice of right to sue from the EEOC on September 27, 2002, and Jackson filed the instant complaint on December 18, 2002.

## **DISCUSSION**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Accordingly "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In analyzing Local 1's motion, this Court must view the facts in a light most favorable to Jackson while "drawing all reasonable inferences in [his] favor." *Haywood v. Lucent Techs. Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). Nevertheless, Jackson "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," "Rule 56(c) mandates the entry of summary judgment." *Celotex*, 477 U.S. at 322.

Before analyzing the parties' arguments, the Court notes the role and effect of Local Rule 56.1 in summary judgment proceedings. While Federal Rule of Civil Procedure ("Rule") 56 governs the parties' summary judgment obligations, Local Rule 56.1 reflects "an attempt to make the parties' respective summary judgment obligations explicit." *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994) (discussing similar local rule). With respect to parties opposing summary judgment, such as Jackson, their obligations are set forth in Local Rule 56.1(b).

Local Rule 56.1(b) requires each party opposing a summary judgment motion to serve and file a memorandum of law, any materials or affidavits referred to in Rule 56(e), as well as a concise response to the movant's statement of facts. *See* LR 56.1(b). This response should contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon" and "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(A)-(B). Failure to meet the requirements regarding the response to a moving party's statement of facts results in the moving party's version of the facts being deemed admitted. LR 56.1(b)(3)(B); *see also McGuire v. United Postal Serv.*, 152 F.3d 673, 675 (7th Cir. 1998) (noting that "[a]n answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission").

Strict enforcement of Local Rule 56.1's requirements has been repeatedly upheld by the Seventh Circuit as "district courts are not obliged in our adversary system to scour the record looking for factual disputes." *Waldridge*, 24 F.3d at 922. This is so even in situations where the

4

non-moving party may be able to create genuine issues of material fact. *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1102-03 (7th Cir. 1990) (discussing Local Rule 56.1's predecessor, Local Rule 12(m)).

Although Jackson is *pro se,* the Supreme Court has held that *pro se* litigants must follow rules of procedure and that mistakes of civil procedure do not excuse those who proceed without counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993). It is true that a motion for summary judgment should not be granted unless a *pro se* litigant has received clear notice as to what needs to be filed and the consequences of a failure to follow the local rules. *Puccini v. United Air Lines, Inc.*, No. 98 C 8140, 2000 WL 1720989, at *5 (N.D. Ill. Nov. 16, 2000). Here, Jackson received in open court the Local Rule 56.2 "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" on October 29, 2003, and thus, Jackson had proper notice of the Northern District of Illinois local rule regarding summary judgment. Although *pro se* litigants are granted more leniency than a party who is represented by council, the *pro se* litigant is still required to follow the rules of procedure. *McNeil*, 508 U.S. at 113.

With these principles in mind, the Court notes that Jackson has failed to comply with his obligations under Local Rule 56.1(b). Of the forty-nine statements of fact submitted by Local 1 pursuant to their obligations under Local Rule 56.1(a)(3), Jackson did not respond to or deny any one of the forty-nine statements. Furthermore, Jackson's declarations to the Court do not conform to the clear mandate contained within the Local Rule that requires an opposing party to provide the Court with "*specific* references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(A) (emphasis added). Instead, Jackson provided the Court with: declarations regarding why he decided to file this case, his history as a carpenter with Local 1, and his alleged use of "racial terms," in which he accuses the defense's

5

witnesses of fabricating their statements because "there was no individualism" to the statements and because Jackson has worked and lived in racially diverse communities and served in the military; a letter from Almarita Husband attesting that her daughter's prescription was not covered by "Health & Welfare Insurance;" Jackson's 2000 and 2002 EEOC charges; a $100 receipt from Evans & Evans Counseling/Consulting Services; Jackson's test results from the Metropolitan Water Reclamation District of Greater Chicago certifying that he passed the examination for carpenter; Jackson's official steward's book; two postal receipts; and the March 2003 issue of The Carpenter's Forum, which was mailed to Jackson. That Jackson has not met his obligations under Rule 56.1 is not lost on Local 1, which argues that its "entire Local Rule 56.1(a)(3) Statement of Undisputed Material Facts is deemed admitted because of Plaintiff's failure to deny or even respond to the short numbered paragraphs of undisputed material facts." (Def.'s Reply Br. at 2.)

Jackson's failure to respond and provide any citation to the record violates the letter of the local rule, and accordingly, fact statements one through forty-nine are deemed admitted. Nevertheless, Jackson's failure to comply with the requirements of Local Rule 56.1 does not mean that summary judgment will automatically be granted in favor of Local 1, as the Court must still "evaluate all facts in the light most favorable to Plaintiff, the non-moving party." *See Austin-Edwards v. Loyola Univ. Med. Ctr.*, No. 03 C 1915, 2004 WL 1243940, at *2 (N.D. Ill. June 3, 2004).

Pursuant to his form Complaint of Employment Discrimination, Jackson seeks to hold Local 1 liable under Section 1983, Section 1981, Title VII, and the ADA. The Court addresses each claim in turn.

## I. Section 1983

Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "The two key elements establishing a violation of § 1983 are (1) a deprivation of a federally guaranteed right, (2) perpetrated under color of state law." *Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001).

It is undisputed in this case that Local 1 is a labor organization and not a state or local government agency. (Compl. ¶ 10; Def.'s LR 56.1(a)(3) ¶ 19.) Further, nothing in the record shows that the conduct of which Jackson complains is related in any way to the performance of the duties of the state office. Jackson has not established a genuine issue as to the material fact regarding whether Local 1 acted under color of state law. Accordingly, the Court grants Local 1's motion for summary judgment as to Jackson's section 1983 claim.

## II. Retaliation

Under Title VII, an employer is prohibited from retaliating against an employee who has "opposed any practice made an unlawful employment practice . . . or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Section 1981 provides in pertinent part: "All persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by

7

white citizens . . . ." 42 U.S.C. § 1981(a). Retaliation claims under Title VII and Section 1981 are treated under the same standard for liability. *Walker v. Abbott Labs.*, 340 F.3d 471, 474 (7th Cir. 2003). Accordingly, this Court's analysis under Title VII is equally applicable to plaintiff's claims under Section 1981.

To show employer retaliation, a plaintiff has two methods to establish a *prima facie* case: the direct method and the indirect, burden-shifting method of proof first elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-05 (1973). *Haywood*, 323 F.3d at 531. Under the direct method, a plaintiff must present direct or circumstantial evidence showing "a statutorily protected activity, an adverse employment action, and a causal connection between the two." *Haywood*, 323 F.3d at 531. Direct evidence requires "an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003). Alternatively, under the adaptation of the *McDonnell Douglas* burden-shifting analysis, a plaintiff must first offer sufficient evidence to establish a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must show that he: (1) engaged in a statutorily protected activity; (2) was qualified for the position for which he applied; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Haywood*, 323 F.3d at 531. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. If the employer makes a showing of a legitimate justification for its action, the plaintiff must then establish that this reason is pretextual. *See id.* at 804.

Jackson has not presented direct evidence of discrimination based on retaliation. Because Jackson is unable to proceed on his retaliation claim under the direct method, the Court

will examine whether he is more successful under the indirect method.

It is undisputed that Jackson engaged in a statutorily protected activity. Accordingly, to determine if Jackson has established a *prima facie* case under the indirect method, the Court looks to the record to determine whether he was qualified to be a steward, whether he suffered an adverse employment action, and whether he was treated less favorably than similarly situated individuals who did not engage in the protected conduct.

**A. Qualified for Position Applied for or Met Performance Expectations**

Local 1 relies on three different arguments to contend that Jackson was not qualified to be a steward. Local 1 contends in its first argument that Jackson was not qualified based on his own history of dues payment, which caused him to be dropped from membership on at least four separate occasions. (Def.'s LR 56.1(a)(3) ¶¶ 34, 35.) Local 1 also asserts that because Jackson has not ensured that his own dues were paid on time, he cannot be relied on to ensure that the carpenters he would be responsible for as steward would pay their dues on time. (*Id.*) Nevertheless, the relevant inquiry is whether Jackson was meeting performance expectations at the time of the alleged discriminatory refusal to appoint him as steward – not during the course of his membership. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("In most cases, when a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but 'whether the employee was performing well at the time of [his] termination.'" (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991)). Jackson paid his dues in 2001 and 2002, the year he applied for the steward position, and thus, he is able to establish that he was qualified for the position in this very limited respect with regard to his

payment of dues during the 2001-02 period.

Next, Local 1 argues that in Jackson's single appointment as steward for a different carpenters' local, he failed to meet the basic job requirements. Local 1 contends that Jackson failed to keep his steward's log of information as required by the official steward's book for the carpenters' union. (Def.'s LR 56.1(a)(3) ¶ 36.) Furthermore, Local 1 states that Jackson failed to record the carpenter's address, phone number, date, or the job for each day worked, job name and address, hours worked, local union affiliation, and whether a carpenter had paid his quarterly dues. (*Id.*) Although past performance is not relevant, Jackson had "just served" as a steward, which can be taken into consideration. (EEOC Charge 210A204364 submitted to the Court on December 16, 2003.) Because Jackson's current record of poor performance is relevant, and he failed to perform the duties of steward adequately, this, in and of itself, establishes that Jackson was not qualified for the position of steward at Local 1.

Finally, Local 1 argues that Jackson's hostile attitudes toward Hispanics and Caucasians disqualified him as a potential steward. Local 1 relies primarily on Jackson's attitude toward Hispanics and Caucasians, whom he referred to as "browns" and "whites" in a derogatory manner, and his refusal to work referrals for jobs that had primarily Hispanic and Caucasian carpenters. (Def.'s LR 56.1(a)(3) ¶¶ 28, 37.) Because a steward is responsible for acting as the representative of the union while a business representative of the union is not present on a particular jobsite, and because Local 1's membership includes Hispanics and Caucasians, Jackson's refusal to work with Hispanics and Caucasians renders him incapable of representing all union members regardless of color. (Def.'s LR 56.1(a)(3) ¶ 21.) This undisputed statement of fact establishes that Jackson was not qualified for the position of steward at Local 1. As such, the Court finds that Jackson cannot establish this element of his *prima facie* case.

## B. Adverse Employment Action

Local 1 contends that Jackson suffered no adverse employment action because when Jackson went to Local 1's office on July 25, 2002, he had no job and was not applying for any job with the union but was merely trying to find out if Local 1 would make him a steward at some unspecified jobsite. (*Id.* ¶¶ 9, 11.) Local 1 argues that Jackson suffered no loss in pay or benefits because a steward is paid the same as every other journeyman carpenter. (*Id.* ¶ 38.)

An adverse employment action is one that is materially adverse, meaning more than a "mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Adverse employment actions may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* Although adverse employment actions do not need to be quantifiable in terms of pay or benefits, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Jackson suffered no loss in job status or promotion as a result of Local 1's refusal to appoint him as steward. (Def.'s LR 56.1(a)(3) ¶ 39.) Furthermore, Jackson has not even identified a job position that was open and required a steward at the time he asked to be appointed as one. (*Id.* ¶¶ 8, 11.) As such, Jackson cannot establish this element of his *prima facie* case.

## C. Similarly Situated Members

Under this prong, Jackson must show that he, "and not any otherwise similarly situated

11

employee who did not complain, was…subjected to an adverse employment action." *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). An employee is similarly situated if "directly comparable to [the plaintiff] in all material respects." *Rogers*, 320 F.3d at 755 (quotations omitted). Jackson fails to identify one other member of Local 1 who did not file a charge with the EEOC that was made steward. (Def.'s LR 56.1(a)(3) ¶ 41.) When asked in his deposition if he could identify another member of Local 1 that received more favorable treatment that did not file a charge, he stated that he could not. (*Id.* ¶ 42.) Furthermore, when asked in an interrogatory to identify a member of Local 1 that was similarly situated that received more favorable treatment that did not file a charge, Jackson objected on the grounds of relevancy and refused to answer. (*Id.* ¶ 43.) There is no evidence in the record that any such similarly situated employee exists. Accordingly, the Court finds that Jackson has not presented a *prima facie* case under the indirect method.

In sum, Jackson has failed to establish a genuine issue as to whether he was subject to retaliation under either the direct or indirect method. The Court thus grants Local 1's motion for summary judgment as to his retaliation claims.

### III. Title VII and Section 1981 Discrimination

Jackson alleges that he was the object of discrimination based on his race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1). As stated above, Section 1981 provides in pertinent part: "All persons . . . shall

12

have the same right . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). "When the plaintiff alleges intentional discrimination, . . . it is clear that the same standards in general govern liability under sections 1981 . . . and Title VII." *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987); *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 511 (7th Cir. 1986); *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1307 (7th Cir. 1985).

In support of its motion for summary judgment, Local 1 argues: (1) Jackson is barred from basing his Title VII discrimination claims on events that occurred outside the statutory limitations period; (2) the race discrimination (as well as disability discrimination) allegations in his complaint are barred because they fall outside the scope of his EEOC charge; and (3) Jackson has failed to establish a genuine issue as to a material fact with regard to his discrimination claims under Title VII and Section 1981. The Court addresses each argument in turn.

### A. Statute of Limitations for Title VII Claims

Title VII, specifically 42 U.S.C. § 2000e-5(e)(1), requires that a charge of discrimination be filed with the EEOC within 180 days "after the alleged unlawful employment practice occurred." *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)(1)). The statute provides that the time period for the filing of the charge may be extended if the aggrieved person initially institutes proceedings with a state or local agency. *Id.* In the state of Illinois, the time period for filing of the charge of discrimination is 300 days. *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 893 (7th Cir. 2001).

13

Acts that occurred more than 300 days prior to the EEOC filing are not actionable unless, under the continuing violation doctrine, they are linked to subsequent acts that occurred within 300 days of the EEOC filing. *Id.*; *see also Huels v. Exxon Coal USA, Inc.*, 121 F.3d 1047, 1049 (7th Cir. 1997). "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. Univ. of Wisc. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997).

Jackson filed his EEOC charge on August 5, 2002. In that charge, he complains of one discrete act of discrimination, *i.e.*, Local 1's refusal to designate him as a union steward, that occurred on or about July 25, 2002. Further, in Jackson's complaint in the instant case, he alleges the same conduct as the basis for his claims. However, in response to Local 1's motion for summary judgment, Jackson has submitted an EEOC charge filed on February 16, 2000. (Def.'s Ex., EEOC Charge 210A01810 submitted to Court on Nov. 19, 2003.) Clearly, the allegations in the February 16, 2000 EEOC charge cannot serve as the basis for the discrimination claims in this case under the continuing violation doctrine because those alleged violations could reasonably have been expected to be made the subject of a lawsuit when they first occurred. As such, any Title VII claims of discrimination based on events occurring outside of the 300-day window, or prior to October 9, 2001, are therefore barred by the statute of limitations as a matter of law.

### B. Scope of the Charge

Local 1 also argues that Jackson's race discrimination claim under Title VII (and disability discrimination claim under the ADA as well) are outside the scope of his August 5,

2002 EEOC charge. To determine whether allegations in the complaint fall within the scope of the EEOC charge, a court looks to whether they are "like or reasonably related to" those contained in the EEOC charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). If the allegations are related, then the court then must determine "whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id.*

In his EEOC charge, Jackson states the following: "I believe I have been retaliated against for filing previous EEOC charges of discrimination, because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my disability, in violation of the Americans with Disabilities Act of 1990." (Def.'s Ex. 1, EEOC Charge of Discrimination of 8/5/02.) The structure of this sentence makes it unclear whether he is complaining solely about retaliation based on his prior EEOC charges involving race and disability discrimination or whether he is alleging race and disability discrimination as well as retaliation.

Local 1 makes much ado about the fact that on its copy of the EEOC charge, he merely checked the box for retaliation. However, because the allegations in the body of the charge include statements such as "Respondent was aware of my disability" and the confusing sentence provided above, the Court is unwilling to hold as a matter of law that Jackson, *pro se* then as he is now, is precluded from raising race and disability discrimination claims in this case. (*See id.*) His current allegations are reasonably related to the muddled allegations in his EEOC charge, and because of the statements in the body of the EEOC charge, the current claims could reasonably have developed from the EEOC's investigation of the charges before it.

15

## C. *Prima Facie* Case for Race Discrimination

"A plaintiff can avert summary judgment for the defendant in an employment discrimination case either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a *prima facie* case under the *McDonnell Douglas* formula." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 940 (7th Cir. 1997). In order to establish a *prima facie* case of race discrimination, a plaintiff must show: (1) that he belongs to a protected class, (2) that he performed his job satisfactorily, (3) that he suffered an adverse employment action, and (4) that his employer treated similarly situated employees outside of his classification more favorably. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994).[1]

Jackson has not argued that he has any direct evidence of discrimination. As such, all of his claims must be considered using the burden-shifting method in *McDonnell Douglas*. Both parties agree that Jackson is an African-American male, and thus he is a member of a protected class. Local 1's arguments regarding the next two prongs, *i.e.*, whether he was qualified for the position applied for and whether he suffered an adverse employment action, are identical to those in relation to the retaliation claim, discussed above, and the same conclusions apply because Jackson has not created a genuine issue as to a material fact regarding whether he was qualified for the steward position or whether he was subject to an adverse employment action. For these reasons, Jackson has failed to establish a *prima facie* case under the indirect method.

Because Jackson is unable to establish a *prima facie* case for race discrimination, he is

---

[1] Although the *prima facie* case for retaliation and discrimination claims is different, "the shifting burdens of production set forth in *McDonnell Douglas* apply to both." *Payne v. Milwaukee County*, 146 F.3d 430, 433 (7th Cir. 1998).

unable to shift the burden of production to Local 1 "to show a legitimate, non-discriminatory reason for its employment action." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002). In sum, Jackson has failed to create a genuine issue as to a material fact with respect to his race discrimination claims, and the Court thus grants Local 1's motion for summary judgment on his Title VII and Section 1981 claims.

## IV. Disability Discrimination

Local 1 argues that Jackson has not established a triable issue as to his disability discrimination claim under the ADA. The ADA prohibits any covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of disability discrimination, a plaintiff must show: (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job either with or without reasonable accommodation, and (3) he has suffered from an adverse employment decision because of his disability. *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002). Once a plaintiff succeeds in establishing a *prima facie* case, courts utilize the *McDonnell Douglas* burden-shifting approach in reviewing motions for summary judgment in ADA disparate-treatment cases. *Pugh v. Attica*, 259 F.3d 619, 626 (7th Cir. 2001).

The ADA's definition of disability encompasses a "physical or mental impairment that substantially limits one or more of the major life activities," "a record of such an impairment," or the status of "being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R §

17

1630.2(g). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A person is substantially limited in a major life activity if he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(i), (ii); *see also Emerson v. N. States Power Co.*, 256 F.3d 506, 511 (7th Cir. 2001).

Jackson has failed to create a genuine issue as to the material fact of whether he is disabled within the meaning of the ADA. Jackson has failed to provide evidence of any physical or mental impairment, record of such an impairment, or his being regarded as having such an impairment. Jackson first admits and then retracts his statement that he was not disabled on July 25, 2002. (Def.'s LR 56.1(a)(3) ¶ 7.) Although he states in his deposition that (1) he was seeing a psychotherapist at around that time; (2) that "whatever that my disability consists of, . . . I feel I have it under control"; and (3) "I mean, you can go into a lapse at any given moment," these statements, which constitute the only evidence of his disability, are insufficient for a rational jury to find that Jackson suffered a physical or mental impairment that substantially limits one or more of the major life activities. (Def.'s Ex. 3, Jackson Dep. at 47.) Furthermore, none of the alleged discriminatory actors at Local 1 was aware or had a perception that Jackson was in any way disabled. (*Id.* ¶ 45.) Based on the sparse evidence in the record, no reasonable jury could find that Jackson was disabled as defined by the ADA. To survive summary judgment, Jackson is required to produce more than a scintilla of evidence in support of his position. *See Anderson*, 477 U.S. at 252. In addition, for the same reasons discussed above with regard to his race

discrimination claims, he has failed to establish a genuine issue as to a material fact with respect to whether he is qualified to perform the essential functions of the job and whether he has suffered from an adverse employment decision. Because he fails to establish elements of his *prima facie* case, the Court need not proceed to the burden-shifting analysis. The Court therefore grants Local 1's motion for summary judgment as to Jackson's discrimination claim under the ADA.

## CONCLUSION

For the reasons set forth above, the Court grants Local 1's motion for summary judgment [doc. no. 11-1]. This case is hereby terminated.

**SO ORDERED**  ENTERED: 9/24/04

*/s/ Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States Judge**